**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**ANDREA BROCKLAND,** individually and
on behalf of all others similarly situated,

               **Plaintiff,**

**v.**

**ROUNDY'S ILLINOIS, LLC,**

               **Defendant.**

Civil Action No. 21-cv-5332

Judge Sharon Johnson Coleman

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Andrea Brockland (collectively "Plaintiff), individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Roundy's Illinois, LLC d/b/a Mariano's ("Mariano's" or "Defendant") to stop Defendant's practice of deceptively and unfairly representing that it possesses the authority to impose and collect a surcharge on Visa debit card cash-back transactions at Defendant's stores in violation of the Illinois Consumer Fraud Act. Plaintiff alleges as follows, based upon her own personal knowledge, and upon information and belief, including investigation conducted by her attorneys.

## I. NATURE OF THE ACTION

1. Defendant is a large grocery store chain in the Midwest with 44 locations in Illinois, and is owned by grocery store conglomerate Kroger.

2. Defendant offers consumers the opportunity to receive cash back with a Visa debit card at all its locations.

3. In or around December 2019, all of Kroger owned grocery stores, including Defendant, began charging a cash-back surcharge fee that is based on the amount of cash-back

consumers elect to receive:

No fee for any request $0.99 and under
$0.50 for cash back between $1 and $100
$3.50 for cash back between $100.01 and $300

4.      Thus, every consumer that chooses to receive cash back with a debit card at Defendant's stores for amounts between $1-$300 is charged a Cash Back surcharge fee, the only thing that varies is the amount of the surcharge, which is subject to Defendant's standard form cash-back surcharge schedule above.

5.      Defendant's imposition of a cash-back surcharge is nothing more than an unlawful, but lucrative, profit center. For example, Walmart, Target, Vons, Albertsons, Pavilions, Trader Joe's, Safeway, Lucky, Stater Bros., Gelson's and Whole Foods all recognize the unlawful nature of such fees and therefore do not impose a Cash-Back Surcharge. Defendant obtains an unfair advantage over them by charging a cash-back surcharge fee and can offer lower prices for its goods and services than its competitors who have to make up the costs of offering cash back for free.

6.      Proof of the profit center rests in the numbers. In 2018, Kroger stores, including Defendant, provided more than 150 million cash-back transactions.[1]

7.      On the low end of the cash-back surcharge schedule above, calculating each of the 2018 150 million cash-back transactions at the $0.50 surcharge rate translates to at least $75 million in extra revenue for Kroger and Defendant per year at the expense of consumers (150,000,000 x $0.50= $75,000,000).

8.      Kroger-owned stores have stated the reason for the cash back fee is "Our cash-back program is designed to save customers money vs. ATM fees, and to give them a safer and more convenient way to get the cash they need" and "Unfortunately, we cannot continue to offer this

---

[1] https://www.latimes.com/business/story/2019-12-20/ralphs-cash-back-fee

service for free due to the high demand and processing and labor costs."[2]

9.     However, Ed Mierzwinski, senior director of the federal consumer program for the U.S. Public Interest Research Group, called Kroger's probable $75-million windfall "a nice chunk of revenue, likely well above cost."[3]

10.     Merchants, such as Defendant, enter into standard form agreements with Visa that requires Defendant to comply with Visa's Core Rules and Visa Product and Service Rules ("Visa's Rules") if Defendant is going to accept Visa credit or debit cards as a payment method.

11.     Visa's Rules Section 1.5.5.2 explicitly declares that surcharge fees cannot be charged unless an applicable law or regulation expressly permit a Merchant to impose a surcharge.

12.     Defendant cannot point to any applicable law or regulation that expressly permits Defendant to impose a surcharge on cash-back transactions. For example, (1) the Visa's Rules do not expressly authorize Defendant to charge a Cash Back surcharge fee; and (2) no other law or regulation expressly authorizes Defendant to charge a Cash Back surcharge fee. Thus, Defendant possessed no authority to represent to Plaintiff and Class Members that it possessed the authority to charge and collect a Cash Back surcharge.

13.     Plaintiff elected to receive $20 cash back with a Visa debit card, and thereafter Defendant deceptively and unfairly represented to Plaintiff and Class Members that it has been expressly authorized by law or regulation to charge a Cash Back surcharge by presenting Plaintiff and Class Members the option to select "yes" in response to the question "Do you accept cash back fee? on Defendant's terminal screen and subsequently collecting the surcharge, when in reality, there is no law or regulation expressly authorizing Defendant to charge a Cash Back surcharge.

14.     The Cash Back Surcharge is simply a lucrative profit center for Defendant.

---

[2] *Id.*
[3] *Id.*

15. Plaintiff and the Class paid a Cash Back surcharge under the deceptive and unfair representation that Defendant was expressly authorized by law or regulation to charge it in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2.

16. Defendant must disgorge all Cash Back surcharges imposed upon consumers.

## II.    VENUE AND JURISDICTION

17. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Defendant's state of citizenship. This Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because most of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

## III.    PARTIES

19. Plaintiff Brockland is a natural person and citizen of Illinois. Plaintiff is a "consumer" or "person" as defined under the Illinois Consumer Fraud Act.

20. Defendant Roundy's Illinois, LLC d/b/a Mariano's is a grocery store that provides its services to consumers in Illinois. It is a Wisconsin corporation with a principal place of business located in Milwaukee, WI.

21. Defendant is owned by Kroger. Upon information and belief, Defendant possesses 44 locations in Illinois.

22. Defendant is a "merchant" under the Visa Rules and is bound by those terms.

23. Defendant's conduct alleged herein occurred in the course of trade or commerce

4

under the Illinois Consumer Fraud Act.

### III.    FACTUAL ALLEGATIONS

**A.    Defendant is Subject to Visa's Rules**

24.    Visa is the largest issuer of debit cards in the United States and enters into standard form merchant agreements with merchants, such as Defendant, who wish to accept payment via visa debit and/or credit cards. These agreements require that the merchants comply with Visa's Rules.

25.    Defendant entered into a merchant agreement with Visa that required Defendant to comply with Visa's Core Rules and Visa Product and Service Rules ("Visa Rules or Visa's Rules") as a condition of accepting Visa as a payment method. A link to Visa's Rules that were applicable at the time of Plaintiff's cash-back Transaction follows:

https://web.archive.org/web/20201101042349/https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf (April 18, 2020 version of Visa's Rules)

26.    Defendant is a merchant as defined under Visa's Rules.

27.    Additionally, by Defendant placing the Visa logo stickers on payment terminals and the windows of its stores, Defendant assents to Visa's Rules and represents to consumers that it complies with Visa's Rules.  By accepting Visa payments from customers, Defendant also represents that it is a merchant in compliance with Visa Rules.

**B.    Visa's Rules Only Permit Surcharging in Limited Circumstances**

28.    Visa only permits merchants to represent to consumers that they are authorized to charge and collect a surcharge fee in very limited circumstances and only when certain requirements are satisfied.

29.    First, in Section 1 of Visa's Rules it lists specific "Prohibitions" on its Merchants,

including the imposition of any amount added to a "Transaction" unless there are express authorizations to do so. Specifically, Visa's Rules 1.5.5.2 prohibition states:

**1.5.5.2 Surcharges**

**A Merchant must not add any amount over the advertised or normal price to a Transaction, unless applicable laws or regulations expressly require that a Merchant be permitted to impose a surcharge.** Any surcharge amount, if allowed, must be included in the Transaction amount and not collected separately.

In the US Region and US Territories: This does not apply to Credit Card Transactions, as specified in Section 5.5.1.5, US Credit Card Surcharge Requirements – US Region and US Territories.

(emphasis added).

30.     Thus, Visa's Rules defines the term "Surcharge" broadly in its prohibition on all Merchants precluding them from adding "any amount" to the "Transaction" that is not "expressly require[d]" by applicable laws or regulations.  Visa's Rules 1.5.5.2.

31.     Critically, the ONLY listed exception to this broad prohibition is the "US Credit Card Surcharge" which is an allowable Surcharge that can be imposed on the consumer if limited in amount and properly disclosed. *See* Visa's Rules 1.5.5.2.

32.     All other allowable Surcharges, (including a Cash Back Fee) are strictly prohibited unless applicable laws or regulations expressly require that the Merchant be permitted to impose such a surcharge.

33.     In other words, for any Merchant (including Defendant) to impose a Cash Back Fee on a consumer it must show that the Cash Back Fee is expressly permitted by applicable laws or regulations.  Because there are no such laws or regulations expressly requiring that Defendant or other Merchants be permitted to chare a Cash Back Fee, such fees cannot be imposed without be a presented as a misrepresentation of its authority to charge such a surcharge under Visa's Rules 1.5.5.2.

34.     Section 5 of Visa's Rules generally governs "Acceptance" provisions including fees that are imposed as a condition of accepting payment by Visa.  Specifically, Section 5.5 of the Visa Rules governs the only types of "Fees" that can be imposed upon a consumer: "Surcharges, Convenience Fees, and Service Fees." *See* Visa's Rules 5.5.1.1.

35.     Specifically, "Surcharges are discussed at 5.5.1, Convenience Fees are discussed at 5.5.2, and "Service Fees" are discussed at 5.5.3.  Notably, Cash Back Fees are not listed in this section or within any other section of Visa's Rules as are other allowable fees.

36.     Thus, a merchant, such as Defendant, must be expressly permitted by law or to impose any surcharge.  The Visa Rules recognize only three types of permissible fees or surcharges to be added that exceed the price of the Transaction:  US Credit Card Surcharges, Convenience Fee and Service Fees. Silence regarding whether or not a surcharge can be imposed is not enough for the merchant to impose a surcharge, such as Defendant's cash back surcharge fee

37.     Here, there are no laws or regulations, including Visa's Rules, which expressly authorize Defendant to represent to consumers that it can charge and collect a Cash Back surcharge. This fact prevents Defendant from representing it possesses the authority to charge and collect a Cash Back surcharge fee on its Verifone Terminal screens.

**C.     Visa's Rules Require Cash-Back Transactions to Comply with Certain Requirements, None of which Expressly Authorize a Cash-Back Fee**

38.     Visa's Rules Table 5-13 addresses limits and requirements for Merchants, like Defendant, who offer Cash Back amounts to Visa members.  Specifically, the table includes the following restrictions on Cash Back transactions:

| Region/Country | Cash-Back without Purchase | Cash-Back Amount Limits[1] | Allowed Product Types | Cardholder Verification | Other |
|---|---|---|---|---|---|
| | | 1,500 and MXN 2,000 | | PIN or CDCVM | |
| **US Region** | | | | | |
| US Region | Allowed | USD 200 | • Debit Card<br>• Prepaid Card | Must contain a PIN | Must participate in Partial Authorization |

39.     Visa's Rule 5.8.1.4 declares that a Cash-Back Transaction **must**:

- Be authorized Online
- Be completed as a domestic Retail Transaction in a Face-to-Face Environment
- Uniquely identify the Cash-Back portion of the Transaction amount
- Be processed in the Merchant's local currency

40.     Thus, Visa's Rules do not expressly authorize a Cash Back surcharge fee to be imposed.

**D.     Defendant's Presentation of the Cash-Back Surcharge to Plaintiff and Class Members is Deceptive and its Collection of the Cash-Back Surcharge is Unfair**

41.     Every time a consumer uses a Visa debit card to get cash back at one of Defendant's stores, Defendant incurs a processing fee for the transaction. Merchants, such as Defendant's competitors who offer cash-back, typically absorb the processing fees and recoup these costs through higher prices for goods and services. However, Defendant deceptively and unfairly chooses to present and collect a Cash Back surcharge upon consumers for cash-back transactions to recoup the processing costs and create a new stream of income to boost its bottom line.

**1.     Defendant's Presentation of the Cash Back Surcharge is Deceptive under the Illinois Consumer Fraud Act ("ICFA")**

42.     On or around March 3, 2021, Plaintiff Brockland purchased a grocery item from Defendant's grocery store located in Chicago, Illinois and elected to receive $20.00 cash back using her Visa debit card:



**Exhibit A**

43.     Defendant deceptively, unfairly, and systematically represented to Plaintiff and class members at all of its stores on its Verifone terminal screen that it is authorized to charge and collect a $0.50 Cash Back surcharge fee by providing Plaintiff and class members the option to select "yes" in response to the question "Do you accept cash back fee? $0.50.



44.    There are no applicable laws, statutes, or regulations that expressly require that Defendant be permitted to impose a surcharge for cash-back transactions. Additionally, Visa's Rules do not permit Defendant to surcharge for a cash-back transaction. In the absence of any applicable law or regulation, there is no basis for Defendant to represent to Plaintiff and class members that it is authorized to charge a Cash Back surcharge fee by providing consumers the opportunity to select "Yes" in responses to "Do you accept cash back fee?"

45.    It is not a factually accurate statement that Defendant can ask Plaintiff and class members "Do you accept cash back fee?  "Yes" or "No" because Defendant does not possess the express authority by law, regulation, and/or Visa's Rules to represent that it can charge and collect a $0.50 surcharge.

46.    Plaintiff selected "Yes" in response to "Do you accept cash back fee?" on the terminal screen because she relied on Defendant's deceptive portrayal of its authorization to charge and collect a cash-back surcharge for cash-back transactions on its Verifone terminal screen.

47.    Defendant intended for Plaintiff and Class Members to rely on the representation ("Do you accept cash back fee? $0.50 "Yes" or "No" on the terminal screen) that it was authorized to have consumers select "Yes" to accept a Cash Back surcharge.

48.     Defendant's representation that it is authorized to charge and collect the $0.50 cash-back surcharge occurred in the course of offering goods for sale and cash-back to consumers, which is trade or commerce.

49.     Defendant also failed to disclose on its terminal screen that it possessed no authority to represent to consumers that it could charge and collect a Cash Back surcharge, which is a material omission. Instead, it just asked consumers to accept the cash back fee by selecting yes or no, never disclosing that if they select "yes" that they are electing to pay a surcharge fee that Defendant possesses no right to charge and collect. Had Defendant disclosed to Plaintiff on the terminal fee when asked, "Do you accept cash back fee?" $0.50 "Yes" or "No," that if Plaintiff selected "Yes," that the Cash Back surcharge she elected to pay was a surcharge that Defendant was not authorized to charge and collect, she would not have chosen to pay the Cash Back surcharge.

50.     Plaintiff and the class suffered actual damages by paying a cash back surcharge fee as a result of on Defendant's deceptive portrayal of its authorization to charge and collect a cash-back surcharge for cash-back transactions on its Verifone screen.

51.     Had Plaintiff known Defendant was not authorized to charge a $0.50 cash back surcharge, she would not have elected to receive $20.00 cash back.

**2.      Defendant's Imposition of the Cash Back Surcharge is an Unfair Practice**

52.      Defendant's Cash Back surcharge fee is unfair because it offends public policy as established by Visa's Rules, which do not authorize a Cash Back surcharge, and only authorizes a surcharge to be imposed if a law or regulation expressly authorizes a surcharge. Defendant had a duty to comply with Visa's Rules and did not do so.

53.     Moreover, Defendant representations regarding the Cash Back fee on the terminal

screen were immoral and unethical because Defendant did not possess a basis to represent that it could charge and collect a Cash Back surcharge. There is not a meaningful alternative to Plaintiff and class Members because Defendant put Plaintiff and Class Members in a position in which they were compelled by Defendant's representations that the cash back surcharge was normal and that they would incur that fee anywhere else. In other words, the consumers, having been tricked into paying Defendant's cash-back surcharge fee, had little alternative but to submit to Defendant's misconduct and pay the Cash Back surcharge.

54.    Defendant's Cash Back surcharge causes substantial injury to Plaintiff and Class Members although a surcharge fee payment ranging from $0.50 to $3.50 for one person may appear small, when Defendant has hundreds of thousands of cash-back transactions per year, millions of dollars are paid by consumers. Defendant operates a 44-store grocery chain with hundreds, if not thousands, of consumers paying a Cash Back surcharge fee each day.

55.    There is no countervailing benefit to Plaintiff and Class Members or to Defendant's competition that Defendant's Cash Back surcharge promotes.

56.    Plaintiff and Class members could not have reasonably avoided the Cash Back surcharge because they were led to believe that Defendant was authorized to charge the Cash Back surcharge fee by Defendant's representations on its terminal screen.

57.    Plaintiff and the Class suffered actual damages in the amount of the Cash Back surcharge paid as a result of Defendant's unfair and deceptive practices.

## IV.    CLASS ACTION ALLEGATIONS

58.    Plaintiff seeks to bring this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class ("Class") is defined as follows:

All persons in the United States, within the applicable statute of limitations, who paid a "DEBIT CARD CASHINGNP" with a Visa Debit Card to Defendant on a receipt substantially similar to **Exhibit A.**
(the "Class")

59.     Plaintiff reserves the right to amend her class definition at any time.

60.     **Numerosity.** The members of the Class are so numerous that joinder of all members would be impracticable. The precise number of Class members are unknown to Plaintiff, but likely includes thousands of class members. The true number of Class members is known by Defendant, however, and potential Class members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice.

61.     **Commonality.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, *inter alia*, the following:

a)      whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices act by charging Cash Back surcharges.

b)      whether Defendant unjustly enriched themselves with unauthorized debit card surcharges;

c)      whether Plaintiff and Class members suffered damages; and

d)      whether Plaintiff and Class members are entitled to equitable relief.

62.     **Typicality.** The claims of Plaintiff are typical of the claims of the members of the Class because, inter alia, Plaintiff and all Class members were injured through the uniform misconduct described above regarding Terminal Fees on debit card retail transactions. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

63.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent counsel and experienced class action attorneys to represent her

interest and the interests of the Class. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff possesses no adverse or antagonistic interests to those of the Class. Plaintiff is willing and prepared to serve the Court and the Class members in a representative capacity with all of the obligations and duties material thereto and is determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for all Class members.

64.     **Predominance and Superiority.**     A class action is an appropriate method for the fair and efficient adjudication of this controversy. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class. Also, the likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the small amount of monetary relief at issue for individual Class members. A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

65.     Damages may be calculated based upon data maintained in Defendant's records so that the cost of administering a recovery for the Class can be minimized. However, the precise amount of damages available to Plaintiff and Class members is not a barrier to class certification.

**V.     CAUSES OF ACTION**

<u>**COUNT I**</u>
**Violation of the Illinois Consumer Fraud**
**Deceptive Business Practices Act 815 ILCS 505/2.**

66.     Plaintiff hereby incorporates paragraphs 1 through 65 above by reference as if fully set forth herein.

67.     At all times relevant hereto, the Illinois Consumer Fraud and Deceptive Business

14

Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA") was in full force and effect.

68.     ICFA is a regulatory and remedial statute intended to protect consumers, including Plaintiff and the Class, against unfair or deceptive acts or practices. Specifically, Chapter 2 of the ICFA prohibits unfair or deceptive acts or practices used or employed in the conduct of any trade or commerce with the intent that others rely upon such deceptive acts or practices. 815 ILCS 505/2.

69.     Chapter 2 provides, in full:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.
> 815 ILCS 505/2.

70.     An ICFA claim resting on deception requires: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception

71.     On or around March 3, 2021, Plaintiff Brockland purchased grocery items from Defendant's grocery store located in Chicago, Illinois and elected to receive $20.00 cash back using her Visa debit card:



**Exhibit A**

72.     Defendant deceptively and systematically represented to Plaintiff and class members at all of its stores on its Verifone terminal screen that it is authorized to charge and collect a $0.50 Cash Back surcharge fee by providing Plaintiff and class members the option to select "yes" in response to the question "Do you accept cash back fee? $0.50.



73.     There are no applicable laws, statutes, or regulations that expressly require that Defendant be permitted to impose a surcharge for cash-back transactions. Additionally, Visa's Rules do not permit Defendant to surcharge for a cash-back transaction. In the absence of any applicable law or regulation, there is no basis for Defendant to represent to Plaintiff and class members that it is authorized to charge a Cash Back surcharge by providing consumers the opportunity to select "Yes" in responses to "Do you accept cash back fee?

74.     It is not a factually accurate statement that Defendant can ask Plaintiff and class members "Do you accept cash back fee?  "Yes" or "No" because Defendant does not possess the express authority by law, regulation, and/or Visa's Rules to represent that it can charge and collect a $0.50 surcharge.

75.     Plaintiff selected "Yes" in response to "Do you accept cash back fee?" on the terminal screen because she relied on Defendant's deceptive portrayal of its authorization to charge and collect a cash-back surcharge for cash-back transactions on its Verifone terminal screen.

76.     Defendant intended for Plaintiff and Class Members to rely on the representation ("Do you accept cash back fee? $0.50 "Yes" or "No" on the terminal screen) that it was authorized to have consumers select "Yes" to accept a Cash Back surcharge.

77.     Defendant's representation that it is authorized to charge and collect the $0.50 cash-back surcharge occurred in the course of offering goods for sale and cash-back to consumers, which is trade or commerce.

78.     Defendant also failed to disclose on its terminal screen that it possessed no authority to represent to consumers that it could charge and collect a Cash Back surcharge, which is a material omission. Instead, it just asked consumers to accept the cash back fee by selecting yes or no, never disclosing that if they select "yes" that they are electing to pay a surcharge fee that Defendant possesses no right to charge and collect. Had Defendant disclosed to Plaintiff on the terminal fee when asked, "Do you accept cash back fee?" $0.50 "Yes" or "No," that if Plaintiff selected "Yes," that the Cash Back surcharge she elected to pay was a surcharge that Defendant was not authorized to charge and collect, she would not have chosen to pay the Cash Back surcharge.

79.     Plaintiff and the class suffered actual damages by paying a cash back surcharge fee as a result of Defendant's deceptive portrayal of its authorization to charge and collect a cash-back surcharge for cash-back transactions on its Verifone screen.

80.     Had Plaintiff known Defendant was not authorized to charge a $0.50 cash back surcharge, she would not have elected to receive $20.00 cash back.

81.     A practice may be unfair under ICFA when it meets one or all of three factors to a significant degree: (1) it offends public policy; (2) it is "immoral, unethical, oppressive, or unscrupulous"; and/or (3) it causes substantial injury to consumers. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014). The degree to which the practice meets one or more of these factors will determine whether the practice is unfair under the Act. *See id.*; *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 712 (N.D. Ill. 2020); *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.

2d 403, 417-18, 775 N.E.2d 951 (2002)).

82.    Defendant's Cash Back surcharge fee is unfair because it offends public policy as established by Visa's Rules, which do not authorize a Cash Back surcharge, and only authorizes a surcharge to be imposed if a law or regulation expressly authorizes a surcharge. Defendant had a duty to comply with Visa's Rules and did not do so.

83.    Moreover, Defendant representations regarding the Cash Back fee on the terminal screen were immoral and unethical because Defendant did not possess a basis to represent that it could charge and collect a Cash Back surcharge. There is not a meaningful alternative to Plaintiff and class Members because Defendant put Plaintiff and Class Members in a position in which they were compelled by Defendant's representations that the cash back surcharge was normal and that they would incur that fee anywhere else. In other words, the consumers, having been tricked into paying Defendant's cash-back surcharge, had little alternative but to submit to Defendant's misconduct and pay the Cash Back surcharge.

84.    Defendant's Cash Back surcharge causes substantial injury to Plaintiff and Class Members although a surcharge fee payment ranging from $0.50 to $3.50 for one person may appear small, when Defendant has hundreds of thousands of cash-back transactions per year, millions of dollars are paid by consumers. Defendant operates a 44-store grocery chain with hundreds, if not thousands, of consumers paying a Cash Back surcharge fee each day.

85.    There is no countervailing benefit to Plaintiff and Class Members or to Defendant's competition that Defendant's Cash Back surcharge promotes.

86.    Plaintiff and Class members could not have reasonably avoided the Cash Back surcharge because they were led to believe that Defendant was authorized to charge the Cash Back fee by Defendant's representations on its terminal screen.

87.     Plaintiff and the Class suffered actual damages in the amount of the Cash Back surcharge paid as a result of Defendant's unfair practices.

88.     Defendant's conduct is in violation of the ICFA, and pursuant to 815 ILCS 505/10a, Plaintiff and Class members are entitled to actual damages, reasonable attorney's fees, injunctive relief, and any other penalties or awards that may be appropriate under applicable law.

**COUNT II**
**Unjust Enrichment**
**Against Defendant**

89.     Plaintiff and Class members repeat and reallege each allegation of paragraphs 1 through 65, as if fully stated herein.

90.     By virtue of Defendant failing to disclose on its terminal screen that it possessed no authority to represent to consumers that it could charge and collect a Cash Back surcharge, which is a material omission, Defendant unjustly retained a benefit to the detriment of Plaintiff and the Class. Specifically, Defendant retained a Cash Back surcharge for each cash back transaction seeking $1-$300 in cash back. Instead of providing a disclosure that Defendant was not authorized to charge a Cash Back surcharge, Defendant asked consumers to accept the cash back fee by selecting yes or no on the terminal screen, never disclosing that if they select "yes" that they are electing to pay a surcharge fee that Defendant possesses no right to charge and collect. Had Defendant disclosed to Plaintiff on the terminal fee when asked, "Do you accept cash back fee?" $0.50 "Yes" or "No," that if Plaintiff selected "Yes," that the Cash Back surcharge she elected to pay was a surcharge that Defendant was not authorized to charge and collect, she would not have chosen to pay the Cash Back surcharge.

91.     Defendant's retention of the aforementioned benefit violates the fundamental principles of justice, equity, and good conscience.

20

92.     As a direct and proximate result of Defendant charging Plaintiff and Class Member an unauthorized Cash Back surcharge, Plaintiff and the Class have suffered actual damages in an amount to be determined at trial, including, but not limited to the actual amounts Plaintiff and Class members paid Cash Back surcharges to Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class defined herein, pray for the following relief:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Federal Rules of Civil Procedure 23, and certifying the Class defined herein;

B.     Designating Plaintiff as the representative of the Class and her counsel as counsel for the Class;

C.     Entering judgment in favor of Plaintiff and the Class and against Defendant for violating the ICFA, and/or for unjust enrichment;

D.     Awarding Plaintiff and the Class their damages, including statutory damages, attorneys' fees, their costs and interest thereon under the ICFA;

E.     Granting all such further and other relief, including equitable relief, as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

## NOTICE TO ILLINOIS ATTORNEY GENERAL OF ACTION

Pursuant to 815 ILCS 505/10a(d), a copy of this Complaint has been mailed to the Illinois Attorney General with the filing of Plaintiff's Complaint.

Respectfully submitted November 24, 2021.

VARNELL & WARWICK, P.A.

/s/ Matthew T. Peterson
Matthew T. Peterson
Brian W. Warwick (Pro Hac Vice to be filed)
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
Telephone Number: 352-753-8600
Email: mpeterson@vandwlaw.com
        bwarwick@vandwlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 24, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew T. Peterson
Mathew T. Peterson

# EXHIBIT A





# MARIANO'S

5353 North Elston
773-481-6731
Your cashier was CHEC 513
MUFFINS AST 4PK    PC    1.99 B
                      ******0261
Rewards Customer           0.50
MR    DEBIT CARD CASHINGNP  0.04
      **** BALANCE          2.53
US DEBIT Purchase
************1805 - C
REF#:    000000    TOTAL: 22.53
PURCHASE: 2.53   CASHBACK: 20.00
AID: A0000000980840
TC: 77EBC5FD26F6D3BB
VERIFIED BY PIN
        DEBIT          22.53
        CHANGE         20.00
TOTAL NUMBER OF ITEMS SOLD = 1
03/03/21 08:03am 507 513 14 999999513
**********************************
********************************
    TELL US HOW WE ARE DOING!
    EARN 50 BONUS FUEL POINTS!
      Go to www.krogerfeedback.com
Date: 03/03/21
Time: 08:02
Entry ID: 531-282-14-507-513-527
      No purchase necessary
    See website for offical rules
******** VERO DRINK CLUB ********
    YOU HAVE PURCHASED 3
        VERO DRINK ITEMS.
      EARN A FREE VERO DRINK
    FOR EVERY 10 VERO DRINKS
    PURCHASED. FREE DRINKS MUST
    BE REDEEMED BY 12/31/2020.

*********************************
Fuel Points Earned Today: 2
    Total Mar Fuel Points: 2
*********************************
Remaining Feb Fuel Points: 145
              ...d Savings $44.50